I,CARAWAY, J.
Plaintiff filed suit in city court to obtain a $1,600 refund for monies paid for an extended warranty that he purchased along with a new automobile. Defendant answered plaintiffs suit and submitted a counterclaim for the $2,500 down payment on the vehicle it claims was never paid by plaintiff. After trial, the trial court ruled that on the basis of the defendant’s invoice admitted into evidence, plaintiff paid the $2,500 down payment. The trial court awarded $1,600, thus refunding the money for the cancelled extended warranty. Defendant appeals, urging manifest error in the trial court’s ruling. For the following reasons, we affirm.

Facts

On June 13, 1999, Comfort Roberts (“Roberts”) purchased a 1999 Dodge Caravan from United Auto Dodge (“UAD”). He also purchased an extended warranty for the vehicle. The purchase was financed through Hibernia Bank. Two days before the sales transaction on June 11, Roberts took possession of the vehicle after execution of a “Bailment/Temporary Use Agreement,” pending his credit approval.
Roberts and a representative of UAD executed a “Buyers Order and Invoice” *844 (hereafter, the “Invoice”) agreement on June 13 which reflects that Roberts received $1,275.77 for his trade-in vehicle and a $1,000 rebate. In the “Cash Down” section of the Invoice, $2,500 is listed. The Invoice further states that:
... If you default in the performance of your obligations under this agreement, the vehicle may be repossessed and you may be subject to suit and liability for the unpaid indebtedness evidenced by this agreement.
|gThe front and back of this order comprise the entire agreement pertaining to the purchase and no other agreement of any kind, verbal understanding or promise whatsoever, will be recognized.
[[Image here]]
This transaction is not valid unless accepted by a manager of United Auto Dodge of Shreveport, Inc.
The Invoice states that the balance owed was to be paid in sixty monthly payments of $479.67. This amount was also reflected on Hibernia’s retail installment sales contract, which was also executed on June 13.
Roberts claims he paid $2,500 in cash on June 13 to the salesperson who handled the sale, Stafford Edwards (“Edwards”). Roberts said that his mother gave him the $2,500, and that he did not get a receipt from UAD, other than the Invoice.
Edwards, along with Edmund Warren (“Warren”), a UAD sales manager, and John Jiles (“Jiles”), a UAD comptroller, disputed the fact that Roberts paid the down payment. Edwards testified that whenever a customer pays cash, the dealership gives the customer a written receipt. Edwards said that “a day or so” after the deal was complete, he called Roberts and asked him for the down payment. Edwards testified that Roberts stated that he left the $2,500 cash on Edwards’ desk. Neither Warren nor Jiles had personal knowledge as to whether Roberts paid the down payment, but both testified that UAD always gives receipts for cash payments, and that no receipt is in Roberts’ file. On June 24, 1999, UAD sent Roberts a letter notifying him that it turned the matter over to the Greater Shreveport Credit Bureau for collection.
laOn September 14, 1999, Roberts executed a cancellation request for the extended warranty. UAD canceled the warranty but refused to pay Roberts the $1,600 refund, advising him that it was going to offset the refund against the alleged unpaid down payment.
On February 2, 2000, Roberts filed suit against UAD in Shreveport City Court seeking the $1,600 refund. UAD answered the lawsuit and brought a recon-ventional demand for $2,500. Following a trial on September 18, 2000, the trial court decided that the Invoice deserved great weight as a business practice of UAD and, as listed on the Invoice, found that Roberts paid the $2,500 down payment. The trial court then awarded Roberts $1,600, the cost of the extended warranty.

Discussion

UAD urges in this appeal that Roberts did not present sufficient evidence to the trial court to prove that he paid the down payment on the vehicle, and that the trial court was manifestly erroneous in finding that Roberts did, in fact, make the down payment on the 1999 vehicle. Specifically, UAD cites the testimony of its employees, who stated that UAD always provides customers with a receipt for cash payments, and that UAD records do not reflect that Roberts was issued any such receipt.
When questioned by defense counsel and the trial court, Roberts repetitively asserted that he paid UAD the $2,500 down payment and simply did not get a *845 receipt for the money, other than the Invoice. Specifically, Roberts testified:
Q: You claim to have paid $2,500 to UAD.
|4A: The same time I got my car and signed the contract. Yes sir, I did. The same day.
Hi # :}:
I don’t remember exactly what happened but I know the day that I purchased my automobile I paid them their down payment.
Q: Alright. And you claim to have paid it in cash?
A: Yes sir, I did.
Q: Who did you give the money to?
A: I gave the money to my sales person ... Stafford Edwards sittin[g] over there in the corner.
Edwards’ testimony was that Roberts did not pay the down payment, but promised to pay it after his mother gave him the money.
Faced with this conflicting testimony, the trial court stated in its oral ruling:
The testimony regarding business practices and the negative connotation — hey we don’t have a receipt versus the plaintiffs case which he says hey I’ve got a receipt. I’ve got the contract and my note, all my documentation’s in order. All things considered how much weight should a court give to that document. Well I think the Court has to give it great weight because that too is a business practice of the defendant. And as a matter of policy if someone has to well it’s not up to me at this level of court to make policy but someone’s got to stand the loss. It ... needs to be the people in the business practice therefore there is a judgment for Comfort Roberts in the amount (sic) $1,600.00.... I just went by the contract that he had.
Appellate review of credibility determinations and fact rulings is governed as follows:
Our review of the case before us is governed by the manifest error standard. It is well settled that a court of appeal may not set aside a trial court’s factual findings in the absence of manifest error or unless such findings are clearly wrong. Reasonable evaluations of credibility and inferences of fact | Rshould not be disturbed, even though the appellate court may believe that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989). To reverse the trial court’s factual findings, the appellate court must find from the record that no reasonable factual basis exists for the findings, and must determine that the record establishes the findings as clearly wrong or mhnifestly erroneous. Stobart v. State through Department of Transportation and Development, 617 So.2d 880 (La.1998).
Where there are two permissible views of the evidence, the fact-finder’s choice between them can never be clearly wrong or manifestly erroneous. Rosell, supra. The trier of fact has a duty to reconcile conflicting versions of the testimony.
Erwin v. State Farm Mut. Auto. Ins. Co., 34,127 (La.App.2d Cir.11/1/00), 771 So.2d 229, 232-233, writ denied, 2000-3285 (La.2/2/01), 784 So.2d 6.
In this case, the trial court first made a choice between the only witnesses to the transaction, Roberts and Edwards. It accepted the testimony of Roberts and that credibility call will not be overturned on appeal. Second, the trial court’s reliance upon the Invoice as evidence of a completed sale is the correct ruling. The document lists and discusses “unpaid indebtedness” which is clearly listed as the sixty *846 installments of $479.67 per month. The $2,500 is therefore not “unpaid indebtedness,” but is instead acknowledged in the parties’ agreement as “cash down,” indicating payment. Finally, the completed sales transaction is further evidenced by Roberts’ possession of the vehicle which was delivered to him by UAD. Accordingly, the judgment of the trial court is affirmed and costs of this appeal are assessed to UAD.
AFFIRMED.